I understand that everyone is here who should be here, so we'll dispense with the calling of the calendar. And we have White v. Berryhill, 18-1481, as the first matter to be argued this morning. Mr. Schneider. Thank you. Good morning, Your Honors. I originally had thought I had 15 minutes. That was on the docket on the website, and now I have 10, so I might talk a little fast. Mr. White argued at the district court that he was disabled by his combination of nerve root compression and obesity and other disabilities. And he argued, and the facts show that he has a nerve radiculopathy going from his back into his left leg. He had an MRI showing nerve impingements. He had a positive straight leg raise in both the sitting and supine position, which is very unusual because most doctors don't give the test in both positions, but that is the requirement of the regulation. He had limited range of motion, sensory loss, reflex loss, and he was unable to stand on his toes and heels or walk on his toes or heels. If he had strength loss, he would have met the listing, but that is not apparent. The ALJ egregiously erred in holding there was no medical evidence of a nerve root compression. He testified that he had to lay down regularly during the day. It was painful to sit over 15 minutes. So as a matter of law, his nerve root compression, in addition to his obesity, equals the listing 1.04 for nerve root compression as a matter of law. Can I just clarify for a minute? Am I right in understanding that you agree that he didn't literally meet the conditions in listing 1.04? Yes. You're saying that it was a medical equivalence. Yes. My understanding is the Supreme Court has said that you actually have to meet them. Step three is a finding that leads to a conclusion of permanent disability. It's a very important and significant finding. But you agree that your client didn't literally meet the listing requirement. No, he did not literally meet it, but he did equal it under the regulations. Has the Supreme Court said that that regulation is no longer in effect about equaling them? I think that they're looking at the statute. So which regulation are you pointing to as supporting? The listing that talks about meeting or equal. Yeah, that's the listing. There's another regulation, and I can look it up, that says if you equal it, you also are prima facie impaired. But in any event, his combination of impairments do not give him the residual functional capacity to perform any kind of work. Did you represent him? I'm sorry? Did you represent him before the hearing? Yes, absolutely. And the ALJ also erred by not discussing his obesity. Did it incorporate a referrer to one of the doctors who refers to his obesity? Yes, and Dr. Wasif, the examining consultant, did note that he was obese. And Dr. Wasif also noted he had moderate limitations in sitting and standing. I have not found a single case where a person who has moderate limitations in sitting is able to perform even sedentary work. There was no doctor. The only doctor who actually gave an RFC was Dr. Fuchs, who was a non-examining consultant. And, of course, the non-examining consultant's opinion cannot trump the findings or opinions of the treating doctors.  In fact, his treating neurosurgeon said that the combination of his radiculopathy and obesity would likely cause the pain that he's experiencing. Also, the objective evidence does support Mr. White's testimony about his limitations and his pain. He has a straight leg raise, which is an objective test that shows he had leg pain. He had the MRI. That's an objective test that's been accepted by the courts. With that, he really his credibility should be accepted, unless there was a very strong reason not to accept it. None of the doctors said that he was not consistent. Nobody said he was not credible. He's had numerous objective tests, like a lumbar compression test, that show that he would have a radiculopathy and the pain and numbness of which he complained. As a matter of law, there is not substantial evidence to support that he was not credible. Once he has those objective results, he is presumed credible. The judge did say he was, or the commissioner argues that my client was evasive, and I addressed that in my reply brief. He really, nobody would look at that and say you're being evasive. Where he was asked, are you able to drive a truck? No, sir. You don't have a license. Could you drive a truck or pick up now? It's not very comfortable. I hurt sitting. I lay in a car. When I get in a car, I set my seat back quite a ways. I'm almost laying down. That would not be considered evasive. Well, we weren't there, right? I mean, the ALJ was there, and so generally, ALJ gets to determine credibility, right? If there's substantial evidence, and once there's objective evidence, something like that would not be substantial. Substantial evidence. Evasive. You need substantial evidence to determine whether the fact finder thought the witness was evasive? Yes. Otherwise, the exception will swallow the rule. If anything that a judge considers evasive is substantial, that defeats the purpose of the substantial evidence test, which is you look at the evidence from both sides, you weigh it, you look what a rational person would think it's strong enough. No, you do have to look at that and decide whether it's evasive. A judge, in light of the objective evidence, that there is not substantial evidence. To support that. And- You've reserved three minutes for rebuttal. Yes, thank you. Thank you. We'll hear next from Mr. Desir. Good morning. So the agency's position is that the claimant here did not meet his burden to establish disability. It's a high burden, and here a plaintiff didn't provide any treating sources, no medical opinion evidence from an acceptable medical source, did not point to any clinical findings, diagnostic evidence, contrary to the characterization of evidence, but diagnostic evidence was mostly benign in that it didn't establish the listings. Ultimately- There's no doubt, based on the record, that his obesity limits some functioning. Is that right? Yes, there is no doubt that obesity limits some of the claimant's functioning, but obesity was considered and accommodated by the RFC. It's a reduced range for light work, which is less than the full range, and, again, which is supported by two medical opinions, one from a consultative examiner, whose opinion could be entitled to considerable rate and constitute substantial evidence, provided it's consistent with the RFC, as well as a medical expert, an orthopedic surgeon, whose opinion was, in this case, adopted, effectively adopted by the ALJ. That, along with the evidence of claimant's treatment notes, showing mostly normal stance, gait, normal strength in the arms and legs, no significant abnormalities, and in consideration of the claimant's lack of full credibility here, there is substantial evidence to support the ALJ's RFC. Could you address the obesity question a little bit more? I understood that under the SSR-021P, the ALJ had an obligation to address the total effects of the claimant's obesity on his functional capacity, and we see in the ALJ's report a couple of mentions, acknowledgment of an obesity finding, but really not a kind of full assessment of how it would have affected his capacity. Could you explain why what he did is sufficient in your view? Yes, thank you. The obesity, as you know, is not a severe impairment, but the regulations do require the ALJ to consider it and take it into consideration. So here there's Dr. — well, as you mentioned, the ALJ relied on multiple sources of evidence and two opinions referring to obesity. There's Dr. Argulis, who explicitly considered obesity as well, but also the medical opinions from Dr. Wassef and Dr. Fuchs. Dr. Wassef, both doctors actually diagnosed obesity and made clear that they accommodated that into the RFC. Dr. Fuchs, this really is just a checkoff on obesity. It doesn't further analyze the effect or the impact of the obesity on functioning. Well, the regulations require it to be considered. I am not familiar of any regulation that specifically states that the ALJ has to point out every specific limitation as it relates to the medical evidence. It just needs to be supported by substantial evidence. Here the correct legal principles were applied. The ALJ considered adequately the obesity. There's no evidence or reason to think to the contrary in this case as the ALJ identified it. And the claimant didn't suffer from morbid obesity. It wasn't the outlying kind of obesity. This was obesity in terms of body mass index, but not — I forget how the staging goes. Right, that's correct, Your Honor. Not the most extreme, is that right? Yeah, that's correct, Your Honor. It's not morbid obesity. Okay. In terms of listing 1.04, your colleague says that he had demonstrated that the claimant's disability equaled, even if it didn't literally satisfy the requirements of any of the individual factors in the listing. Why is he wrong in that? Thank you, Your Honor. Well, our position is that that argument was waived below. But notwithstanding the waiver here, the ALJ's decision went through and discussed the requirements of the listing. And as the court recognized earlier, to satisfy the listing, every element must be met. There's the introductory paragraph, and then there's the subparagraphs A, B, or C. And so those relate to, just briefly, evidence of nerve root compression characterized by neuroanatomic distribution of pain, spinal arachniditis, which is a pain disorder caused by inflammation of the arachnoid joint nerves, and lumbar spinal stenosis resulting in pseudoclaudication, which causes impingement or inflammation of the joints. I thought Mr. Schneider was saying, though, that the regulations allow a claimant to equal the listing as opposed to actually satisfy each listing. Is he right? The regulations do permit equivalence, but the question of equivalence goes to severity, and it needs to be corroborated by medical evidence. I thought it was that he also waived that argument. That is my argument. My argument is that, as laid out in the brief, the commissioner's position is that this argument was waived in toto. But focusing on the other reasons why it's still supported, here the ALJ went through the subparagraphs. If you follow the ALJ's decision, the subparagraphs are read into it pretty distinctly. Moreover, there's the objective medical evidence that's just lacking here. The severity is not met. Again, the normal stance and gait, limited range of motion, but functional ability. And that, altogether, taken as a whole, in conjunction with the medical opinion evidence, in conjunction with, again, the diagnostic evidence, not actually establishing nerve root impingement, I think was the term used earlier. We disagree with that characterization of the evidence as well. I would like to continue with the credibility analysis. Of course, as the court knows, great deference should be given to the administrative law judge as the adjudicator who had the chance to test the witness' credibility in person. Here, the ALJ, not to beat a dead horse, relied on medical opinion evidence, considered that along with clinical evidence, diagnostic evidence, and did all that in conjunction with the assessment of the inconsistent statements. The evasiveness wasn't the sole piece of evidence the ALJ relied on, and the totality of the record does support his credibility finding. Again, claimant has not pointed to any evidence supporting that he satisfied his burden beyond the RFC. In terms of making assessment of pain, how would you describe what the ALJ did? He looked at the record evidence and description of the claimant's gait and other characteristics that might reflect whether he was suffering pain. Didn't he say that there was some measure of pain? He believed the claimant as to that, but the question was how acute, chronic, severe it was? That's exactly correct, Your Honor. The question is not whether the claimant experienced pain, and as you know, disability doesn't require someone to be pain-free. The question is whether his pain, focusing on the credibility analysis, was as severe as alleged, and that just wasn't borne out by the record. In any event, the RFC shows that the ALJ was considerably favorable to the claimant in that the ALJ imposed a reduced range for light work, less than the full range. I believe even limitations for alternating positions every hour for five minutes. These limitations, in reading the ALJ's decision as a whole, adequately addressed his pain. Even if we disagreed with the credibility determination, wouldn't you still prevail at some level? That is, he expressed a view about his own mobility and pain and so on, but there's still substantial evidence, no? Certainly substantial evidence supports the ALJ's RFC, and to the extent that the credibility analysis is flawed in part, I don't concede that it is, but even if it were, we would prevail because substantial evidence supports the ALJ's findings. Unless you've got anything further, thank you very much. Thank you. Thank you. Thank you. The substantial evidence test is really well established by this court and by other courts that the Social Security Act is a remedial statute and must be liberally construed to include and not to exclude. And in looking at substantial evidence, this is not summary judgment where if there's any material evidence most favorably construed to the defending side with all inferences. No, there is a weighing test here. You have to look at what gives evidence its weight and what detracts from its weight. We keep hearing a deferential standard, and that's new language. For many years, we never talked about it as deferential. It's less than a preponderance of the evidence, but it's certainly more than the summary judgment or directed verdict standard. There must be rational probative force. Otherwise, how would you ever find that an ALJ was not supported by substantial evidence? The courts have said it has to be more than a scintilla. It has to be more than a touch here and there. And the case law is well established in this circuit and other circuits that once you have objective clinical and radiological tests showing the amount of impairments that my client has, you should give great weight to his testimony about pain. But the ALJ found that some of the testimony he gave was contradicted or in tension with what the professionals, the medical professionals, had observed. For example, his claim that he couldn't lift a gallon of milk or that his left leg felt numb and tingly. It always feels that way. That wasn't reflected in many of the prior reports. Well, right, but he testified at his hearing some of the prior reports were earlier, but many of the medical reports substantiated that he had great pain and tingling. He had a long course of treatment for it. He had injections. He took medication. He went to physical therapy. Using the standards, the legal standards for judging credibility, he is credible and there is not substantial evidence when you weigh it from both sides. But in any event, he does equal the listing when you consider the obesity in combination with all the other factors under 104, and I ask you to please determine that the ALJ must, like the regulations say, must consider and analyze the effect of obesity. That is mandatory language, and I believe and I request that you enforce it. So your view is that it was not enough to refer to Dr. Wassef's opinion? No. Well, and even if you did, then Dr. Wassef, as opposed to Dr. Fuchs, the examining consultant found he had moderate limitations in sitting, which does not give him the RFC to do any work. Thank you. Thank you very much.